UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| **Garik Mkrtchyan** | )<br>)<br>) |
| *Petitioner,* | ) Civil Action No. 5:25-cv-00116 |
| v. | )<br>) |
| **Cardell T. Morant,**<br>U.S. Immigration and<br>Customs Enforcement,<br>Special Agent in Charge,<br>Homeland Security Investigations,<br>Charlotte Field Office; | )<br>)<br>)<br>)<br>)<br>)<br>) |
| **Todd M. Lyons,**<br>Acting Director U.S. Immigration and<br>Customs Enforcement | )<br>)<br>) |
| **Kristi Noem,**<br>Secretary of the U.S. Department of<br>Homeland Security; | )<br>)<br>)<br>) |
| and **Pam Bondi,**<br>Attorney General of the United States,<br>in their official capacities, | )<br>)<br>) |
| *Respondents,* | ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## INTRODUCTION

Pursuant to Counts I-VII of his Complaint, Plaintiff Garik Mkrtchyan respectfully moves this Court for a Temporary Restraining Order and Preliminary Injunction enjoining the Department of Homeland Security and its agents from continuing his unlawful detention.

Mr. Mkrtchyan, a 41-year-old citizen of Armenia, lawfully entered the United States on August 1, 2022, and timely filed a Form I-589 asylum application on November 21, 2022. He later

1

filed a Form I-140 immigrant petition (EB-2 NIW) on February 26, 2025. Both filings remain pending before USCIS and provide him statutory authorization to remain in the country during adjudication.

Despite his full compliance with immigration law, ICE agents arrested him on August 6, 2025, in Charleston, South Carolina, and transferred him to the Folkston facility, where he has now been detained for over two months without a lawful basis, warrant, or individualized finding of flight risk or dangerousness.

Mr. Mkrtchyan and his counsel promptly sought release through a bond hearing, but on August 19, 2025, Immigration Judge Andrew Hewitt denied bond, labeling him a "flight risk." This conclusion was unsupported and directly contradicted by extensive evidence of Mr. Mkrtchyan's deep ties to the United States, his home ownership, business operations, lawful entry, absence of criminal record, and residence with his wife and two minor children.

Counsel immediately appealed the bond denial to the Board of Immigration Appeals ("BIA") on August 25, 2025, yet as of mid-October 2025, over two months later, the Board has not adjudicated the appeal. On October 15, 2025, counsel filed a Motion to Expedite citing prolonged unlawful detention and imminent irreparable harm; however, the BIA has not issued any response to date.

Meanwhile, Mr. Mkrtchyan filed a Petition for Writ of Habeas Corpus in this Court challenging the legality of his detention. Pending that decision, he moved before the Immigration Judge to continue his upcoming Individual Hearing to avoid prejudicing his ability to prepare while detained. Yet the IJ summarily denied the continuance the following day, reasoning that "the federal habeas proceeding is not relevant" to the request, thereby forcing Mr. Mkrtchyan to proceed to trial while unlawfully confined and without effective access to counsel.

This pattern of agency inaction and disregard for due process has left Mr. Mkrtchyan trapped in a state of unlawful detention and procedural paralysis. Immediate judicial intervention is necessary to preserve his liberty, protect his statutory rights, and prevent irreparable injury.

## STANDARD OF REVIEW

"A temporary restraining order is an extraordinary and provisional remedy designed to preserve the status quo and prevent irreparable harm before a full hearing on the merits." *Ginzburg v. Martínez-Dávila*, 368 F. Supp. 3d 343, 347 (D.P.R. 2019) (quoting *Pro-Choice Network v. Schenck*, 67 F.3d 377, 388–89 (2d Cir. 1995)). The standard governing the issuance of a TRO is the same as for a preliminary injunction. Courts consider four well-established factors: The likelihood of success on the merits; The likelihood of irreparable harm in the absence of preliminary relief; That the balance of equities tips in the plaintiff's favor; and That an injunction is in the public interest.

See *Tirrell v. Edelblut*, 747 F. Supp. 3d 310, 313 (D.N.H. 2024); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As demonstrated below, each of these factors strongly supports granting the requested injunctive relief to Plaintiff.

## ARGUMENT

### I. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS

The Department of Homeland Security's continued detention of Mr. Garik Mkrtchyan violates both the Immigration and Nationality Act ("INA"), constitutional due process, and federal civil rights law.

Under 8 U.S.C. § 1226(a), the government may detain a noncitizen before a final removal order only to ensure appearance at future proceedings or to protect the community from danger.

The statute and its implementing regulations presume release on bond or supervision absent such individualized findings. *Matter of Guerra*, 24 I&N Dec. 37 (BIA 2006).

Here, DHS and ICE have made no lawful or individualized determination that Mr. Mkrtchyan presents either a flight risk or a danger to the public. He entered lawfully on a B-2 visa, has no criminal record, resides with his wife and children in Charleston, South Carolina, and has significant property and community ties. He has fully complied with immigration law by filing a Form I-589 Application for Asylum in November 2022 and a Form I-140 (EB-2 NIW) in February 2025, both pending before USCIS. These bona fide filings confer statutory authorization to remain in the United States while adjudication is ongoing. *See* 8 U.S.C. § 1158(a)(1); § 1182(a)(9)(B)(iii)(II).

By detaining Mr. Mkrtchyan despite these lawful, pending applications, ICE has acted arbitrarily, capriciously, and under color of law in violation of the Fifth Amendment's Due Process Clause. The Supreme Court has repeatedly recognized that liberty from arbitrary confinement lies at the heart of due process protections. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). The Sixth Circuit likewise holds that prolonged § 1226(a) detention without adequate justification offends due process. See *Ly v. Hansen, 351 F.3d 263 (6th Cir. 2003).*

Moreover, the conduct of DHS and ICE officials implicates 18 U.S.C. § 242, which makes it a federal offense for any person acting under color of law to willfully subject another to the deprivation of rights secured by the Constitution or federal law, or to impose different punishments or penalties "on account of such person being an alien." That statute embodies Congress's command that officials who act beyond lawful authority to detain or punish individuals based on alienage or other impermissible grounds violate the fundamental civil rights of the person detained.

In this case, ICE's decision to seize and confine Mr. Mkrtchyan, a peaceful, law-abiding asylum applicant with no criminal record, while ignoring statutory limits on detention and disregarding his pending lawful immigration matters, constitutes precisely the sort of willful deprivation of constitutional rights under color of law that § 242 was designed to prevent.

Accordingly, the record establishes that Mr. Mkrtchyan is substantially likely to prevail on the merits of his habeas and constitutional claims. His detention violates 8 U.S.C. § 1226(a), the Due Process Clause of the Fifth Amendment, and 18 U.S.C. § 242, which collectively protect individuals within the United States from arbitrary confinement and discriminatory treatment by government officials.

## II.  PLAINTIFF FACES IRREPARABLE HARM

Without immediate judicial intervention, **Mr. Mkrtchyan** will continue to suffer grave and irreparable harm.

a. He remains unlawfully detained at the Folkston ICE Processing Center, deprived of his liberty without any individualized finding of danger or flight risk. The loss of personal freedom constitutes irreparable injury per se. *See Gonzalez v. O'Connell,* 355 F.3d 1010, 1015 (7th Cir. 2004).

b. By unlawfully detaining Mr. Mkrtchyan, DHS has also fundamentally altered the posture of his immigration case, stripping him of a statutory layer of review. His affirmative asylum application, which had been properly pending before USCIS, was automatically transferred to the Executive Office for Immigration Review (EOIR) and converted into a defensive proceeding solely as a result of his detention. This shift deprived him of the opportunity to have his claim first adjudicated in the nonadversarial setting contemplated by law, leaving him one stage closer to removal and with fewer procedural protections.

  c. While detained, Mr. Mkrtchyan is unable to effectively prepare or present evidence in support of his asylum and EB-2 NIW petitions. Detention severely restricts his access to documents, witnesses, and communication with counsel, thereby depriving him of the meaningful opportunity to be heard that due process requires. The government's actions have therefore imposed ongoing procedural and constitutional harm that cannot be remedied by monetary relief.

  d. Prolonged confinement has caused severe emotional distress to both Mr. Mkrtchyan and his family, who rely on him for financial and emotional support. The forced separation of a husband and father from his wife and children is precisely the type of noncompensable injury that warrants immediate injunctive relief.

  e. If ICE continues to detain him or initiates removal while his lawful applications remain pending, he will suffer the loss of statutory protections under 8 U.S.C. § 1158 and § 1182(a)(9)(B)(iii)(II), effectively nullifying Congress's intent to safeguard bona fide asylum applicants from being treated as unlawfully present during the pendency of their cases.

  Courts consistently recognize that continued deprivation of liberty, loss of procedural protections, separation from family, and interference with the exercise of statutory and constitutional rights constitute irreparable harm justifying a temporary restraining order. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Ly v. Hansen*, 351 F.3d 263, 277 (6th Cir. 2003).

### III. THE BALANCE OF EQUITIES STRONGLY FAVORS PLAINTIFF

  The balance of equities weighs overwhelmingly in Mr. Mkrtchyan's favor. The relief sought does not disrupt any lawful government function; it merely seeks to restore the lawful status quo, a situation in which Mr. Mkrtchyan, a law-abiding asylum applicant, remained free while pursuing his pending immigration applications before USCIS.

Granting injunctive relief would simply ensure that the government complies with the statutory and constitutional limits Congress has imposed on civil immigration detention. DHS and ICE would suffer no prejudice from being required to release a non-dangerous, fully compliant individual or to provide a constitutionally adequate bond hearing. By contrast, the ongoing deprivation of liberty, separation from family, and impairment of due process rights inflicts profound and continuing harm on Mr. Mkrtchyan and his U.S.-based family.

In *Rodriguez v. Robbins*, the Ninth Circuit affirmed that "freedom from imprisonment … lies at the heart of the liberty" interest protected by due process, and held that the deprivation of such constitutional rights constitutes irreparable harm in the context of immigration detention. Granting relief here will simply compel the government to act in accordance with the Immigration and Nationality Act and the Fifth Amendment's guarantee of due process, restoring the lawful and fair process that Mr. Mkrtchyan is entitled to receive.

## IV.  INJUNCTIVE RELIEF SERVES THE PUBLIC INTEREST

The public interest is best served when federal agencies act within the limits of their lawful authority and respect the constitutional guarantees of due process and liberty. The government has no legitimate interest in continuing to detain a law-abiding individual who poses no threat and has pending immigration petitions that entitle him to remain in the United States while they are adjudicated. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 29 (1st Cir. 2021).

Upholding the rule of law and ensuring the fair treatment of asylum seekers strengthens public confidence in the immigration system and the judiciary. Preventing unlawful detention also protects scarce government resources and promotes respect for constitutional norms that distinguish civil confinement from punishment. The requested injunction therefore fully aligns with the public interest and the principles of justice that underlie the INA and the Constitution.

## CONCLUSION

For the foregoing reasons, Petitioner Garik Mkrtchyan respectfully requests that this Court:

1. Issue a Temporary Restraining Order and Preliminary Injunction enjoining Respondents from continuing to detain Petitioner at the Folkston ICE Processing Center;

2. Order Petitioner's immediate release under reasonable supervision or, in the alternative, direct Respondents to provide a constitutionally adequate bond hearing within seven (7) days, at which the Government bears the burden of proving by clear and convincing evidence that continued detention is necessary; and

3. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted on 17th of October 2025,

/s/ Vano I. Haroutunian
Vano I. Haroutunian, Esq.
(VH1010)
Ballon Stoll, P.C.
810 Seventh Avenue, Suite 405
New York, NY 10019
(212) 575-7900 Ext. 3285
vharoutunian@ballonstoll.com
*Counsel for Plaintiff*